**Terry D. McINTYRE, Appellant,**

v.

**Myrna TRICKEY, Appellee.**

**No. 89–2700.**

United States Court of Appeals, Eighth Circuit.

Submitted May 27, 1992.

Decided Sept. 4, 1992.

Rehearing and Rehearing En Banc Denied Dec. 10, 1992.

Christopher John Holthaus, St. Louis, Mo., for appellant.

Stephen D. Hawke, Jefferson City, Mo., for appellee.

Before MCMILLIAN, JOHN R. GIBSON, and BOWMAN, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

This case is before us on remand from the United States Supreme Court. In *McIntyre v. Trickey*, 938 F.2d 899 (8th Cir.1991), we held that a state attorney's prosecution of Terry D. McIntyre for stealing an automobile violated the Fifth Amendment's Double Jeopardy Clause because McIntyre had earlier been prosecuted for first-degree tampering based on his unauthorized operation of the same automobile. *Id.* at 905–07. Our decision applied the rule of *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), which states that the Double Jeopardy Clause blocks a subsequent prosecution if the government, to establish an essential element of the charge to be prosecuted, will prove conduct constituting an offense for which the defendant has already been prosecuted. *Id.* at 521, 110 S.Ct. at 2093. In *United States v. Felix*, —— U.S. ——, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992), the Supreme Court recently announced limitations on the *Grady* rule. The Court vacated our opinion in *McIntyre,* and remanded for reconsideration in light of *Felix. Caspari v. McIntyre,* —— U.S. ——, 112 S.Ct. 1658, 118 L.Ed.2d 381 (1992). Relying on

*Grady,* as modified by *Felix,* we again hold that the second prosecution of McIntyre violated the Double Jeopardy Clause.

In June 1986, a circuit court in the City of St. Louis found McIntyre guilty of first-degree tampering, based on his operation of an automobile owned by a Kirkwood, Missouri, car dealership with the knowledge that he lacked the owner's consent. In February 1987, a circuit court in the County of St. Louis convicted McIntyre of stealing that same automobile from the dealership.

The Missouri Court of Appeals rejected McIntyre's double jeopardy claim. *State v. McIntyre,* 749 S.W.2d 420, 422 (Mo.Ct.App. 1988). McIntyre filed a petition for a writ of habeas corpus in the district court based on his double jeopardy claim.[1] A magistrate judge recommended denying McIntyre's petition because under Missouri law, tampering is not a lesser-included offense of stealing. *McIntyre v. Trickey,* No. 88–1708C(2), slip op. at 3–4 (E.D.Mo. Nov. 2, 1988) (magistrate's report). The district court adopted the magistrate's report and recommendation. Order of Nov. 22, 1988, slip op. at 1. After McIntyre refined and reasserted his claim in a motion to alter or amendment judgment, the magistrate again recommended denying relief, Magistrate's Report of August 8, 1989, slip op. at 12, and the district court adopted that recommendation. Order of September 18, 1989, slip op. at 1.

After proceedings in the district court, the Supreme Court issued its opinion in *Grady v. Corbin,* and McIntyre asserted a *Grady* claim before this court. This court rejected the State of Missouri's arguments that we should not reach the merits because McIntyre had failed to exhaust state remedies and had committed "abuse of the writ." *McIntyre,* 938 F.2d at 901–02. We

also held that McIntyre was entitled to rely on *Grady* although that case prescribed a "new rule" under *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *McIntyre,* 938 F.2d at 902–04. We concluded that the *Grady* rule fit into one of the two *Teague* exceptions that allow retroactive application of new rules for cases on collateral review. *Id.*

We concluded under *Grady* that the second prosecution of McIntyre violated the Double Jeopardy Clause because "the government, to establish essential elements of the stealing charge, proved conduct that constituted an offense for which McIntyre had already been prosecuted." *Id.* at 906. We observed that in the second trial, for stealing, the "government proved the same conduct that it had proved to establish the entirety of the tampering offense." *Id.* (emphasis added). We then observed that the conduct that proved the tampering offense was used to prove "the whole of ... two elements" of the stealing charge. *Id.*

After the Supreme Court vacated our decision with directions to reconsider in light of *Felix,* the parties submitted letter briefs at our request.

The State of Missouri again argues that McIntyre should be prohibited from proceeding on the merits because he failed to exhaust his double jeopardy claim in the state courts. The State also repeats its argument that McIntyre cannot rely on *Grady* because that case announced a "new rule" after his conviction became final.

■ We are not persuaded by the State's arguments and adhere to our earlier holdings on these issues.[2] *See* 938 F.2d at·901–04.

1. Nothing appears in the record regarding McIntyre's efforts to exhaust his state remedies. The State of Missouri, in its response to McIntyre's federal habeas petition, stated that McIntyre had exhausted all state remedies on his double jeopardy claim and his petition was not procedurally barred. 938 F.2d at 900–01.

2. We are aware of the Second Circuit's decision in *United States v. Salerno,* 964 F.2d 172 (2d

Cir.1992), disagreeing with our conclusion that the *Grady* rule is retroactively available to habeas petitioners because it falls within one of the two *Teague* exceptions. *Id.* at 176–79. We adhere to our holding that *Grady* must be accorded retroactive effect because the prohibition on double jeopardy is a " 'categorical guarantee[ ] accorded by the Constitution.' " *McIntyre,* 938 F.2d at 904 (citation omitted).

The State next contends that *Felix* requires denial of McIntyre's petition for a writ of habeas corpus. Specifically, the State asserts that: (1) McIntyre was prosecuted at the first trial only for tampering and at the second trial only for stealing; (2) a mere overlap in proof between the two prosecutions does not establish a double jeopardy violation; and (3) the conduct constituting the two offenses, stealing and tampering, occurred on different days and the Double Jeopardy Clause thus does not bar separate prosecutions.

The resolution of this case turns on the extent to which *Felix* modifies the rule of *Grady*. The *Grady* test is relatively simple in its formulation: The Double Jeopardy Clause bars a "subsequent prosecution [if] ... the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Grady*, 495 U.S. at 521, 110 S.Ct. at 2093. In *Felix*, however, the Supreme Court refused to apply this language to bar a prosecution for conspiracy to manufacture, possess, and distribute methamphetamine when two of the nine overt acts supporting the conspiracy charge were based on conduct for which Felix had previously been prosecuted. —— U.S. at ——, ——, 112 S.Ct. at 1380, 1385. The Court also held that prosecution on related substantive counts was not barred even though evidence concerning the underlying conduct had been introduced in a previous drug trial to establish Felix's criminal intent. *Id.* —— U.S. at ——, ——–——, 112 S.Ct. at 1380, 1382–83.

In its discussion, the Court distinguished between prosecution for an offense and the introduction of relevant evidence of particular misconduct. *Id.* —— U.S. at ——, ——–——, 112 S.Ct. at 1383. It also distinguished between crimes involving a " 'single course of conduct' " and those involving " 'multilayered conduct as to time and place.' " *Id.* —— U.S. at ——, ——–——, 112 S.Ct. at 1385.

*Felix* thus limited, but did not discard *Grady*. Our task is to determine whether the nature of McIntyre's criminal conduct and the scope of the two prosecutions still bring his case within the *Grady* rule or cast it into one of the categories covered by *Felix*.

In *Grady*, the Court held that the Double Jeopardy Clause barred the prosecution of a motorist for criminally negligent homicide and assault after he had earlier pled guilty to driving while intoxicated and failing to keep to the right of the median in connection with the same accident. 495 U.S. at 521–23, 110 S.Ct. at 2093–94. The Court observed that the State of New York admitted that it planned to prove "the entirety of the conduct for which Corbin was convicted—driving while intoxicated and failing to keep right of the median—to establish essential elements of the homicide and assault offenses." *Id.* at 523, 110 S.Ct. at 2094. The Court stated, however, that the State could proceed with the prosecution if it relied on conduct, such as driving too fast in a heavy rain, for which Corbin had not already been convicted. *Id.* It also limited its holding by stating that the presentation of specific evidence in one trial would not "forever prevent the government from introducing that same evidence in a subsequent proceeding." *Id.* at 521–22, 110 S.Ct. at 2093. "The critical inquiry is what conduct the State will prove, not the evidence the State will use to prove that conduct." *Id.* at 521, 110 S.Ct. at 2093.

*Felix* presented a far different factual pattern than that of *Grady*. The government first prosecuted Felix in the Western District of Missouri for the attempt to manufacture methamphetamine between August 26 and 31, 1987, based on the delivery of precursor chemicals and equipment to him at Joplin, Missouri. —— U.S. at ——, 112 S.Ct. at 1379. To counter Felix's defense that he lacked criminal intent with respect to the delivery, the government introduced evidence that he had manufactured methamphetamine in Oklahoma earlier in 1987. *Id.* —— U.S. at ——, 112 S.Ct. at 1380. The government introduced the evidence under Federal Rule of Evidence 404(b), and the district court instructed the jury that the evidence of the Oklahoma

activities was admissible only to show Felix's state of mind regarding the chemicals and equipment he attempted to purchase in Missouri. *Id.*

The government later prosecuted Felix in the Eastern District of Oklahoma for conspiracy to manufacture, possess, and distribute methamphetamine between May 1 and August 31, 1987. Two of the nine overt acts supporting the conspiracy charge were based on conduct that had been the subject of the Missouri prosecution. *Id.* The government also prosecuted Felix on related substantive charges. *Id.* — U.S. at ——, 112 S.Ct. at 1380–81.

The Court first rejected the argument that the Double Jeopardy Clause barred Felix's prosecution on the substantive drug offenses even though the government had presented evidence of those offenses at the earlier Missouri trial. "Felix was charged in the Missouri case only with attempting to manufacture methamphetamine in Missouri, in late August 1987" while in the Oklahoma case, he "was charged with various drug offenses that took place in Oklahoma in June and July 1987." *Id.* — U.S. at ——, 112 S.Ct. at 1382. The Court explained: "The actual crimes charged in each case were different in both time and place; there was absolutely no common conduct linking the alleged offenses." *Id.*

The Court further stated that although evidence of the Oklahoma transactions was admitted at the Missouri trial, it was introduced simply to "help show Felix' state of mind" and that "he was not *prosecuted* in the Missouri trial for any offense other than the Missouri attempt offense...." *Id.* (emphasis in original). Citing *Dowling v. United States*, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990), the Court observed: "[T]he introduction of relevant evidence of particular misconduct in a case is not the same thing as prosecution for that conduct." *Id.* — U.S. at ——, 112 S.Ct. at 1383.

The Court next rejected the argument that the prosecution of Felix on the Oklahoma conspiracy charge violated double jeopardy because two of the nine overt acts supporting the conspiracy charge concerned conduct for which Felix had been previously prosecuted in Missouri. *Id.* — U.S. at ——, 112 S.Ct. at 1383–85. The Court refused to apply *Grady* in this context: "Taken out of context, and read literally, this language [in *Grady*] supports the defense of double jeopardy. But we decline to read the language so expansively, because of the context in which *Grady* arose and because of difficulties which have already arisen in its interpretation." *Id.* — U.S. at ——, 112 S.Ct. at 1383–84.

The Court rejected the double jeopardy claim because of "long established precedent," *id.* — U.S. at ——, 112 S.Ct. at 1383, holding that conspiracy to commit an offense and the offense itself "are separate offenses for double jeopardy purposes." *Id.* — U.S. at ——, 112 S.Ct. at 1385. The Court then addressed the basis of *Grady's* holding, stating that although the traffic offenses in that case "were not technically lesser-included offenses of the homicide and assault charges," they were analogous to charges discussed in *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), which the Court had labeled a " 'species of lesser included offense.' " *Felix*, — U.S. at ——, 112 S.Ct. at 1384. In *Vitale*, the Court stated in dicta that a traffic conviction for failure to reduce speed might be viewed as a " 'species of lesser included offense' " if the State relied on the conduct underlying that conviction to prosecute the motorist on a manslaughter charge arising from the same accident. *Id.* — U.S. at ——, 112 S.Ct. at 1384 (citing *Vitale*, 447 U.S. at 420, 100 S.Ct. at 2267). In *Grady*, the Court "simply adopted the suggestion [it] had previously made in dicta in *Vitale*." — U.S. at ——, 112 S.Ct. at 1384.

The Court then distinguished between cases involving a " 'single course of conduct' " and those involving "multilayered conduct as to time and place." *Id.* — U.S. at ——, 112 S.Ct. at 1385. Although reliance on a lesser-included offense analysis may be useful in the former situation, it is "much less helpful in analyzing" the latter. *Id.* (citing *Garrett v. United States*, 471

U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985).

■ *Felix* therefore suggests that the *Grady* rule applies in cases where the criminal activity was limited to a "single course of conduct" rather than to cases involving certain types of "multilayered conduct." *See United States v. McHan,* 966 F.2d 134, 140–41 (1992) (as amended). If a single course of conduct is involved, we must then determine whether one of the charged offenses is a "species of lesser included offense" of a greater offense charged in a separate prosecution. *See Sharpton v. Turner,* 964 F.2d 1284, 1288 (2d Cir.1992).

We first consider the threshold issue of the nature of the conduct involved. The evidence admitted in his two trials showed that on November 22, 1985, McIntyre entered a car dealership in Kirkwood, Missouri, and arranged to go on a test drive with a salesman, Steven George. While George was getting the keys to the demonstrator car, McIntyre remained in the showroom looking at another car that had keys in its ignition that were similar to the keys of the demonstrator car. After McIntyre took the test drive with George, he gave a set of keys to the salesman. About fifteen minutes after McIntyre left the dealership, George and another salesman discovered that the demonstrator's keys were missing and that the keys returned by McIntyre were the keys to the showroom model.

Two days later, on November 24, two police officers spotted McIntyre driving the stolen car. After a pursuit, the officers stopped the car and arrested McIntyre and a passenger. The officers discovered the missing keys in the car's ignition.

A circuit court jury in the City of St. Louis found McIntyre guilty of first-degree tampering, Mo.Rev.Stat. § 569.080 (1986), based on his unauthorized operation of the car on November 24 with the knowledge that he lacked the owner's consent. A circuit court jury in the County of St. Louis later found McIntyre guilty of felony stealing, Mo.Rev.Stat. § 570.030 (1986), based on his taking the same car without the owner's consent for the purpose of withholding it permanently from the owner.

■ The criminal activity at issue here—stealing a car and then driving it—is not the type of "multilayered conduct as to time and place" that the Court exempted from the *Grady* rule in *Felix. See* —— U.S. at ——, 112 S.Ct. at 1385. Clear support for this conclusion appears in *Felix,* where the Court distinguished multilayered conduct from the " 'classically simple situation presented in *Brown [v. Ohio].' " Id.* (citing *Garrett,* 471 U.S. at 789, 105 S.Ct. at 2416).

In *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), the Court applied the double jeopardy rule of *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), to bar a subsequent prosecution for auto theft after the defendant had earlier been convicted of joyriding in connection with the same automobile. *Brown,* 432 U.S. at 168–70, 97 S.Ct. at 2226–28. Like McIntyre, the *Brown* defendant stole a car and drove it for several days. *Id.* at 162, 97 S.Ct. at 2223.[3]

We conclude that McIntyre's criminal activity was as "classically simple" as that of the *Brown* defendant, and involved a "single course of conduct" rather than "multilayered conduct." *See United States v. Pungitore,* 910 F.2d 1084, 1110–11 (3d Cir. 1990), *cert. denied,* —— U.S. —— – ——, 111 S.Ct. 2009–11, 114 L.Ed.2d 98 (1991). This determination does not settle the question, however, as to whether *Grady* renders unconstitutional McIntyre's second prosecution. We must also consider whether the two offenses of which McIntyre was convicted, first-degree tampering and stealing, are of such a character that one may be considered a "species of lesser included offense" under *Felix.*

---

**3.** *Brown* does not control this case because under Missouri law, tampering is not a lesser included offense of stealing. *State v. Rivers,* 663 S.W.2d 255, 256 (Mo.Ct.App.1983). In *Brown,* joyriding was a lesser included offense of auto theft under Ohio law. *Brown,* 432 U.S. at 168, 97 S.Ct. at 2226.

In the tampering case, the court stated in its charge to the jury that McIntyre could not be found guilty unless jury members found that he knowingly operated the car in question, that he lacked the owner's consent to do so, and that he had knowledge of that lack of consent. In the stealing trial, the jury charge stated that McIntyre could not be found guilty unless jury members found that he took the automobile in question, that he did so without the consent of the owner, and that he did so for the purpose of withholding it permanently from the owner. (938 F.2d at 906).

■ Neither one of these offenses is a lesser-included offense of the other under the *Blockburger* standard, for each requires proof of an element that the other does not. *See Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182. *Felix* teaches, however, that even if one offense is "technically" not a lesser-included offense, it still may be considered a "'species of lesser included offense.'" *Felix,* —— U.S. at ——, 112 S.Ct. at 1384. Although the Court in *Felix* did not define that phrase, its discussion indicated that a "species of lesser included offense" would include an "offense that is a permissible but not necessary predicate[ ]" of a greater offense. *Sharpton,* 964 F.2d at 1288. This type of lesser offense was at issue in *Grady,* where "the State sought to rely on the two previous traffic offense convictions to sustain the homicide and assault charges...." *Felix,* —— U.S. at ——, 112 S.Ct. at 1384.

■ We conclude that on the facts of this case, the first-degree tampering charge must be viewed as a species of lesser-included offense of the greater offense of stealing under the *Felix* analysis. As in *Grady,* the government relied on conduct for which McIntyre had already been convicted to sustain the later charge. *See McIntyre,* 938 F.2d at 906. Although it is not necessary to rely on a thief's unauthorized operation of a car to prove that he stole the car, in this case the government relied on that conduct (which constituted the entirety of the tampering case) to prove that McIntyre stole the car. Thus,

the tampering conviction was a "species of lesser included offense."

The final issue raised by *Felix* is whether the government actually *prosecuted* McIntyre in his first trial for the activities that were later used to prove the stealing charge. *See Felix,* —— U.S. at ——, 112 S.Ct. at 1382–83. In *Felix,* the Court made clear that the "introduction of relevant evidence of particular misconduct in a case is not the same thing as prosecution for that conduct." *Id.* —— U.S. at ——, 112 S.Ct. at 1383. The Court then concluded that the introduction of the Oklahoma transactions to prove intent at the Missouri trial did not constitute "prosecution" for the Oklahoma transactions. *Id.* The government "simply introduced those transactions as prior acts evidence under Rule 404(b)." *Id.*

A far different situation is presented here. The government, to establish essential elements of the stealing charge, proved conduct—operating an automobile without the owner's consent—for which McIntyre had actually been prosecuted. *See McIntyre,* 938 F.2d at 906. Unlike *Felix,* the government here did not introduce conduct pertaining to a separate crime at the first trial simply to help prove an element of the crime charged; rather, the conduct the government proved constituted the entirety of the crime prosecuted at the first trial. Moreover, the same conduct was proved to establish nearly the entirety of the offense charged in the second prosecution. *See id.*

Having analyzed the concerns raised by *Felix,* we again hold that the prosecution of McIntyre for stealing violated the Fifth Amendment's prohibition against double jeopardy. We are not persuaded by the government's argument that McIntyre was prosecuted at the first trial only for tampering and at the second trial only for stealing. In the stealing trial, the government proved the same conduct it had proved to establish the entirety of the tampering offense; significantly, it proved that conduct to establish nearly the entirety of the stealing charge. *McIntyre,* 938 F.2d at 906. This was not a situation involving a "mere overlap" in proof. *See Felix,* —— U.S. at ——, 112 S.Ct. at 1382 ("a mere

**444**

overlap in proof between two prosecutions does not establish a double jeopardy violation"). The same conduct was proved at both trials to establish charges that were nearly identical.

 We also are not persuaded by the State's argument that the tampering offense and the stealing offense occurred on different days. As we stated in our first opinion, " 'The Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units.' " 938 F.2d at 906 (citing *Brown*, 432 U.S. at 169, 97 S.Ct. at 2227).

For the foregoing reasons, we reverse the judgment of the district court and remand with instructions to grant the writ of habeas corpus.